UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TALMON HEGWOOD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 2887 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| MEIJER, INC., and CASEY STEFANO, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Talmon Hegwood, Jr. alleges in this suit that Meijer, Inc. and Berwyn police officer Casey Stefano violated 42 U.S.C. §§ 1983 and 1985 and Illinois law in connection with his arrest and prosecution for retail theft. Doc. 3-1. Meijer removed the case to federal court. Doc. 3. After the court denied Defendants' motions to dismiss, Docs. 49-50 (reported at 2017 WL 5517255 (N.D. Ill. Nov. 17, 2017)), the parties engaged in discovery. Defendants now move for summary judgment. Docs. 192, 195. Their motions are granted.

**Background**

Consistent with Local Rule 56.1(a)(3), Defendants filed a statement of undisputed facts along with their summary judgment motions. Doc. 190. Each asserted fact in the Local Rule 56.1(a)(3) statement is properly supported by citation to competent evidence of record. Local Rule 56.1(b)(3)(B) required Hegwood to file "a concise response to [Defendants'] statement … contain[ing] … a response to each numbered paragraph in [Defendants'] statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). Despite having been served with

a Local Rule 56.2 Notice, Doc. 191, which explained in detail the requirements of Local Rule 56.1, Hegwood filed a noncompliant Local Rule 56.1(b)(3)(B) response, Doc. 231.

Other than those paragraphs admitting Defendants' assertions, nearly every paragraph of Hegwood's Local Rule 56.1(b)(3)(B) response does not respond to Defendants' factual assertions, fails to cite specific record evidence to support his denial of those assertions, cites record evidence that does not contravene those assertions, and/or supports his denials with inadmissible hearsay. Accordingly, the non-compliant portions of Hegwood's Local Rule 56.1(b)(3)(B) response are disregarded. *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710-11 (7th Cir. 2015) ("[T]he district court did not abuse its discretion in disregarding the facts contained in [the nonmovant's] statement of additional facts that were not supported by proper citations to the record."); *Bryant v. Bd. of Educ., Dist. 228*, 347 F. App'x 250, 253 (7th Cir. 2009) ("The district court was entitled to disregard those assertions in [the nonmovant's] proposed statement of facts that violated Local Rule 56.1 by not being properly supported … ."). Hegwood's 23-page, 79-paragraph "Counter Affidavit," Doc. 239, which he filed a month after responding to Defendants' summary judgment motions, is disregarded because it is tardy and, more significantly, because it does not present facts through the vehicle of a compliant Local Rule 56.1 statement or response. *See FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005) ("We have noted before that rules like 56.1 provide[] the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court.") (alteration in original, internal quotation marks omitted); *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1108 (7th Cir. 2004) ("In granting the Board's motion for summary judgment, the court explained that it had considered *only the facts in the parties' Local Rule 56.1 Statements of Material Facts*, as it was entitled to do.") (emphasis added); *Mervyn v.*

*Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663 (N.D. Ill. 2015) (holding that facts may be presented on summary judgment only through a compliant Local Rule 56.1 statement or response) (collecting cases); *Thorncreek Apartments III, LLC v. Vill. of River Forest*, 970 F. Supp. 2d 828, 838-39 (N.D. Ill. 2013) (same).

Hegwood's failure to file a compliant Local Rule 56.1(b)(3)(B) response has consequences. The local rules provide that "[a]ll material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3)(C). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (collecting cases); *see also Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (same); *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Hegwood's *pro se* status does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Zoretic*, 832 F.3d at 641 ("While we liberally construe the pleadings of individuals who proceed pro se, neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes.") (internal quotation marks omitted); *Brown v. Wyndemere LLC*, 608 F. App'x 424, 425 (7th Cir. 2015) ("[A] district court is entitled to enforce its local rules, even against *pro se* litigants.").

Accordingly, the court accepts as true the facts set forth in Defendants' Local Rule 56.1(a)(3) statement "to the extent th[ose] facts [a]re supported by admissible and docketed evidence" and not properly controverted by Hegwood's Local Rule 56.1(b)(3)(B) response. *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) (internal quotation marks omitted) ("According to well-established Seventh Circuit law, [the nonmovant's] noncompliance [with Local Rule 56.1(b)] meant that the district court could exercise its discretion to accept [the movant's] statements of fact as undisputed."); *see also Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [movant's] factual submissions as unopposed, because the [nonmovant] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation.") (collecting cases); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by [Local Rule 56.1(b)(3)(B)], those facts are deemed admitted for purposes of the motion.") (internal quotation marks omitted); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012) (similar).

That said, the court is mindful that "a nonmovant's … failure to comply with Local Rule 56.1, does not … automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (citations and internal quotation marks omitted). The court accordingly recites the facts as favorably to Hegwood as the record and Local Rule 56.1 permit, and then will determine whether Defendants are entitled to summary judgment on those facts. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of

those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

On December 2, 2016, Marcus Anderson, a loss prevention agent at the Meijer store in Berwyn, "observed Hegwood wearing a black jacket and a New York Yankees baseball hat enter the Meijer store and proceed to a clothing display of Chicago Cubs T-shirts." Doc. 190 at ¶¶ 8, 17. Anderson further observed Hegwood remove numerous Chicago Cubs T-shirts from the display, place the shirts under his jacket, and leave the store without paying. *Id.* at ¶ 18. Anderson called the Berwyn Police Department, reported the theft, asked that a police officer be sent to the store, and described the suspect as an African-American male wearing a black jacket and a Yankees hat. *Id.* at ¶ 19. Anderson left the store, saw Hegwood cross the parking lot, and began following him on foot. *Id.* at ¶ 21. Anderson again called the Berwyn Police Department and advised that he saw the suspect enter a Popeye's restaurant near the Meijer store. *Id.* at ¶ 22.

Officer Stefano was dispatched to the Meijer store to respond to a report of retail theft by an African-American male wearing a black jacket and a Yankees hat. *Id.* at ¶ 20. The dispatcher advised Stefano that the suspect entered the Popeye's restaurant some 0.2 miles down the street from Meijer. *Id.* at ¶ 23. Stefano then drove to the Popeye's. *Id.* at ¶ 24.

Upon entering the Popeye's, Stefano saw an individual matching the description of the suspect—an African-American male wearing a black jacket and a Yankees hat. *Ibid.* "Stefano approached Hegwood and asked him to identify himself." *Id.* at ¶ 25. Anderson arrived and identified Hegwood as the person he saw at Meijer taking shirts without paying for them. *Id.* at ¶ 26. Anderson and another officer then saw a stack of twenty-six Chicago Cubs T-shirts with Meijer price tags and hangers at one of the restaurant's tables. *Id.* at ¶ 27. Stefano arrested Hegwood for retail theft, placing handcuffs on his wrists. *Id.* at ¶ 29. Anderson then told

5

Stefano that he recognized Hegwood from a previous retail theft at Meijer on or about August 11, 2015, which Anderson had reported to the Berwyn police at that time. *Id*. at ¶¶ 30-31. Although Hegwood complained of chest pain when Stefano attempted to interview him, resulting in his being taken to a hospital for medical treatment, at no time following his arrest did he assert to any police officer that he had suffered a throat or neck injury from the arrest. *Id*. at ¶ 35.

Stefano spoke with a Cook County Assistant State's Attorney ("ASA") about both shoplifting incidents. *Id*. at ¶¶ 36-37. The ASA approved one charge of retail theft (class three felony) against Hegwood for the December 2, 2016 incident and one charge of retail theft (class four felony) for the August 11, 2015 incident. *Ibid*.

Stefano testified before a state grand jury regarding the two incidents, and Hegwood was indicted. *Id*. at ¶ 39. Hegwood entered into a plea agreement under which, in exchange for his guilty plea to an amended charge of misdemeanor retail theft for the December 2, 2016 incident, the charge for the August 11, 2015 incident was dismissed. As part of his guilty plea, Hegwood stipulated that a factual basis existed sufficient for a finding of guilt on the December 2, 2016 offense. *Id*. at ¶¶ 40-41.

## Discussion

Defendants contend at the outset that Hegwood's suit should be dismissed because he has "struck out" under 28 U.S.C. § 1915(g). Doc. 193 at 2-3; Doc. 196 at 12-13. But because Hegwood filed this suit in state court and Defendants removed it to federal court, § 1915(g) does not apply. *See Gay v. Chandra*, 682 F.3d 590, 596 (7th Cir. 2012) ("The PLRA's three-strikes obstacle does not apply in state courts, where [the plaintiff] filed this suit."). Nonetheless, as shown below, Hegwood's claims fail on the merits.

I.      **Sections 1983 and 1985 Claims Against Meijer**

Meijer seeks summary judgment on the § 1983 claims against it on the ground that it did not engage in state action. Doc. 196 at 4-5. For purposes of § 1983, "[p]rivate action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights." *Hallinan v. Fraternal Order of Police*, 570 F.3d 811, 815 (7th Cir. 2009); *see also L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) ("A private person acts under color of state law when [the private person] is a willful participant in joint action with the State or its agents. This requires evidence of a concerted effort between a state actor and that individual.") (emphasis omitted) (citations and internal quotation marks omitted). To prevail against Meijer on this issue, Hegwood must adduce evidence sufficient to show that Meijer or its agents "had a meeting of the minds and thus reached an understanding with a state actor to deny [Hegwood] a constitutional right." *Wilson v. Warren Cnty.*, 830 F.3d 464, 468 (7th Cir. 2016) (internal quotation marks omitted). "[M]erely call[ing] on the law for assistance" does not transform a private party into a state actor, "even though [the private party] may not have grounds to do so." *Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1989).

Because Hegwood adduces no evidence to support his contention that Meijer or any agent improperly acted in concert with Stefano or the Berwyn police, there is no basis to find that Meijer engaged in state action. It follows that Meijer is entitled to summary judgement on Hegwood's § 1983 claims. And because there is no record evidence of conspiracy, Meijer and Stefano are entitled to summary judgment on Hegwood's § 1985(3) claim. *See Redwood v. Dobson*, 476 F.3d 462, 466 (7th Cir. 2007) (holding that there is no viable § 1985(3) claim where

7

there was no conspiracy). Finally, even putting aside the state action issue, Hegwood suffered no violation of his constitutional rights for the reasons set forth below.

## II. Section 1983 Claims Against Stefano

### A. Fourth Amendment False Arrest Claim

"Probable cause is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Probable cause exists "if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge … are sufficient to warrant a prudent person, or one with reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (omission in original) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). In determining whether a police officer had probable cause, the court must view the circumstances from the perspective of a reasonable person in the officer's position. *See Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008). The probable cause standard "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999).

Having received from the dispatcher a description of the retail theft suspect as an African-American male wearing a black jacket and a Yankees hat, having been further advised by the dispatcher that the suspect entered the Popeye's restaurant, and having seen an African-American male matching the description in the restaurant, Stefano had reasonable suspicion that Hegwood was the subject of the dispatch, justifying an investigatory detention under *Terry v. Ohio*, 392 U.S. 1 (1967). *See United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003) ("[P]olice observation of an individual, fitting a police dispatch description of a person involved

in a disturbance, near in time and geographic location to the disturbance establishes a reasonable suspicion that the individual is the subject of the dispatch."). And when Anderson arrived and identified Hegwood as the person who had committed retail theft not just earlier that day, but also in August 2015, Stefano had probable cause to arrest. *See Tangwall v. Stuckey*, 135 F.3d 510, 519-20 (7th Cir. 1998); *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986). This defeats Hegwood's Fourth Amendment false arrest claim.

B.     **Fourth Amendment Excessive Force Claim**

An arrest effected with excessive force violates the Fourth Amendment. *See Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). An officer's use of force is excessive if, "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Gonzalez*, 578 F.3d at 539 (internal quotation marks omitted). The record as set forth in the Local Rule 56.1(a)(3) statement and Local Rule 56.1(b)(3)(B) response says nothing about neck or throat pain and nothing about the force used in arresting Hegwood, other than the handcuffing. Accordingly, no reasonable jury could find for Hegwood on his excessive force claim. *See Williams v. Brooks*, 809 F.3d 936, 945 (7th Cir. 2016) ("Since Officer Brooks had probable cause to stop and arrest Williams, he could handcuff Williams without violating the Fourth Amendment."); *Stainback v. Dixon*, 569 F.3d 767, 772-73 (7th Cir. 2009) (holding that officers did not use excessive force in handcuffing a suspect, even though the suspect "said that he did not want to be handcuffed because he thought it would hurt" and "complained generally about pain after he was handcuffed").

C.     ***Brady* Claim**

Hegwood claims that information was withheld from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Doc. 219 at 21. First, in his summary judgment opposition,

9

Hegwood asserts that an incident report withheld from him is exculpatory because it shows he was not wearing a black jacket and Yankees hat at the time of his arrest. *Id*. at 23. True enough, the incident report, *id*. at 133, describes Hegwood as wearing different clothing than the clothing described by Anderson and the dispatcher for the December 2, 2016 incident, but the report refers to the *August 11, 2015 incident*, so it is not material to whether he was properly identified prior to the *December 2, 2016 arrest*. *Ibid*. Accordingly, the report does not undermine his December 2, 2016 identification and thus does not support his *Brady* claim. *See Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008) (recognizing that the first element of a *Brady* violation is that "the evidence at issue is favorable to the accused, either being exculpatory or impeaching").

Second, Hegwood alleges that "Stefano's part in the scheme [was] to manufacture police reports with false materials statements." Doc. 3-1 at ¶ 17. This allegation appears to rest on the fact that the arrest report identifies the location of Hegwood's arrest as "7111 W Cermak Road," which is the Meijer store, when in fact the arrest occurred at Popeye's restaurant down the street at 6935 Cermak Road. Doc. 15-1 at 23, 28. However, another section of the arrest report identifies Popeye's as the place of arrest. *Id*. at 18. Because the arrest report provided the correct location elsewhere in the report, and because Hegwood knew the correct location, information regarding the arrest's location was not suppressed for *Brady* purposes. *See Anderson v. City of Rockford*, 932 F.3d 494, 504-05 (7th Cir. 2019) ("Evidence is suppressed for *Brady* purposes if the prosecution failed to disclose evidence that it or law enforcement was aware of before it was too late for the defendant to make use of the evidence and the evidence was not otherwise available to the defendant through the exercise of reasonable diligence.") (internal quotation marks omitted). Additionally, given that the location of Hegwood's arrest

10

was never disputed, the scrivener's error in the arrest report is not material exculpatory information under *Brady*. *See United States v. Clark*, 935 F.3d 558, 567 (7th Cir. 2019) ("[*Brady*] and its progeny establish that government-suppressed evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.") (internal quotation marks and citation omitted).

### D. Equal Protection Claim

Because the record provides no support for Hegwood's allegation that his arrest and prosecution were motivated by racial animus, his equal protection claim fails. *See Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019) ("Lisle, however, has not presented evidence that would allow a jury to infer reasonably that Lieutenants Samuel or Brookman acted based on racial animus."); *Xiong v. Wagner*, 700 F.3d 292, 296 (7th Cir. 2012) ("Based on the record available, no reasonable juror could infer that Wagner's statements demonstrate the existence of racial animus toward the Xiongs.").

## III. State Law Claims

### A. Malicious Prosecution Claim

To prevail on his malicious prosecution claim, Hegwood must prove facts showing: "(1) commencement or continuation of an original proceeding [by the defendant]; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Colbert v. City of Chicago*, 851 F.3d 649, 654-55 (7th Cir. 2017) (alteration in original) (internal quotation marks omitted). No reasonable jury could find for Hegwood on the first element because, as shown above, there was probable cause to believe that he had committed both the August 11, 2015 and December 2, 2016 retail thefts at Meijer.

11

Nor could any reasonable jury find for Hegwood on the second element. As to the retail theft charge arising from the December 2, 2016 incident, Hegwood pleaded guilty, which is not a favorable termination. *See Bontkowski v. United States*, 28 F.3d 36, 37 (7th Cir. 1994). And the retail theft charge arising from the August 11, 2015 incident was dismissed pursuant to a plea agreement, which is not termination "in a manner implying innocence." *See Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013) ("A prosecutor's dismissal of a criminal charge *may* imply innocence, but … it does not do so when it is part of a plea bargain."); *Swick v. Liautaud*, 662 N.E.2d 1238, 1243 (Ill. 1996) ("The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused … ."). Accordingly, Defendants are entitled to summary judgment on the malicious prosecution claim.

B.     **Intentional Infliction of Emotional Distress Claim**

Defendants seek summary judgment on Hegwood's intentional infliction of emotional distress ("IIED") claim. Doc. 193 at 15; Doc. 196 at 9-10. Hegwood's brief does not defend that claim, thereby forfeiting any opposition he might have presented. *See Gates*, 916 F.3d at 641 ("The district court was not required to address a claim or theory that plaintiff did not assert [in opposition to summary judgment]."); *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

Even setting aside forfeiture, the claim fails on the merits. "In order for a plaintiff to prevail under Illinois law in a tort action for [IIED], [he] must demonstrate that: (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended that his conduct would inflict severe emotional distress, or knew there was a high probability that his

12

conduct would cause severe emotional distress, and (3) the defendant's conduct in fact caused severe emotional distress." *Zoretic*, 832 F.3d at 645 (citing *Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994)). "For conduct to be extreme and outrageous it must go beyond all bounds of decency and be considered intolerable in a civilized community." *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) (internal quotation marks omitted). No reasonable jury could find on the summary judgment record that Anderson's or Stefano's conduct was wrong at all, let alone that it was extreme and outrageous. *See Cairel v. Alderden*, 821 F.3d 823, 836 (7th Cir. 2016). And no reasonable jury could find that Anderson or Stefano acted with the intent to inflict severe emotional harm or the knowledge that such harm would ensue. Summary judgment accordingly is appropriate on the IIED claim.

## C.  Negligent Infliction of Emotional Distress Claim

Defendants seek summary judgment on Hegwood's negligent infliction of emotional distress ("NIED") claim. Doc. 193 at 15; Doc. 196 at 9, 11. Hegwood's brief does not defend that claim, thereby forfeiting any opposition he might have presented. *See Gates*, 916 F.3d at 641; *Nichols*, 755 F.3d at 600.

In any event, the claim fails on the merits. "Illinois courts treat claims by direct victims of negligent infliction of emotional distress under the same approach used for standard negligence claims. In other words, a party advancing a negligent infliction of emotional distress claim must demonstrate a defendant's duty, as well as a breach that proximately caused the claimant an injury." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009) (internal citation omitted). If the non-movant "has not produced evidence sufficient to create a triable issue of fact on any one of the required elements—duty, breach, injury, or causation— summary judgment is appropriate on [his] claim for negligent infliction of emotional distress."

13

*Ibid*.  Because the Local Rule 56.1 statement and response do not create a triable issue that Defendants breached a duty that caused Hegwood an emotional injury—as shown above, Defendants did nothing wrong, let alone negligent—Defendants are entitled to summary judgment on Hegwood's NIED claim.

## Conclusion

Defendants' summary judgments motions are granted.  Judgment will be entered in favor of Meijer and Stefano, and against Hegwood.

September 30, 2019

_____
United States District Judge